[S. F. Nos. 634, 635. Department Two.—December 20, 1897.]

WILLÍAM M. FITZHUGH, Respondent, v. THOMAS ASH-
WORTH, Superintendent of Streets, and C. S. TILTON,
Intervenor, Appellants.

STREET IMPROVEMENT—CONSTRUCTION OF SEWER—RESOLUTION OF INTENTION
—COMPENSATION OF CITY ENGINEER—PAYMENT TO SUPERINTENDENT OF
STREETS—WORK OF FORMER ENGINEER UNDER ABANDONED RESOLUTION—
MANDAMUS.—Under the act of 1889, p. 162, which provides for work upon
streets, etc., and for the construction of sewers within municipalities,
the resolution of intention under which the work of the construction
of a sewer is done, is the only foundation for the jurisdiction of the
board to proceed with the work, and all "incidental expenses," includ-
ing the compensation of the city engineer, which are required to be
advanced by the contractor to the superintendent, for payment by
him, are necessarily connected with the work done in the proceed-
ings had under and in connection with such resolution, and prop-
erty holders cannot be burdened with expenses incurred under any
former abandoned resolution, nor can the compensation of a former
city engineer for work done and plans and specifications and dia-
gram prepared by him for the proposed construction of the same
sewer under a former abandoned resolution be considered or taken
as any part of the "incidental expenses" advanced by the con-
tractor to the superintendent of streets, under a subsequent resolu-
tion of intention which was carried out, and the superintendent of
streets may be compelled by mandamus to pay the compensation ad-
vanced for the city engineer to the one who acted under the latter
resolution.

ID.—REFERENCE IN RESOLUTION TO FORMER PLANS—AID TO NEW CITY EN-
GINEER.—Plans and specifications do not constitute a necessary part of a
resolution of intention, and, when specified therein, are superfluous,
and need not be followed; and the fact that a subsequent resolution
of intention to construct a sewer refers to the former plans and
specifications prepared by a former city engineer under an aban-
doned resolution does not make ·the compensation of such former
engineer any part of the incidental expenses to be advanced to
the superintendent of streets under the subsequent resolution; and
when the board ordered the new city engineer to make plans, speci-
·fications, diagram, etc., under such resolution, and the work was
completed thereunder, the fact that the new city engineer was
aided to some extent by the plans, maps, drawings, etc., made by
the former engineer, does not entitle the compensation of the former
engineer to be included in the incidental expenses so advanced,
whatever other legal remedy, if any, he may have therefor.

ID.—MANDAMUS—DUTY ENJOINED BY LAW UPON SUPERINTENDENT OF STREETS
—PAYMENT OF MONEY ADVANCED.—Money advanced to the superintend-
ent of streets by the contractor to cover the compensation of the

city engineer as part of the "incidental expenses" required by law to be so advanced to the superintendent of streets, is held by the superintendent of streets in his official capacity, and it is a duty enjoined upon him by law to pay the sum to the party entitled thereto; and *mandamus* is a proper proceeding to enforce the rights of such party.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. A. A. Sanderson, Judge.

The facts are stated in the opinion of the court.

A. J. Donovan, and John B. Gartland, for Thomas Ashworth, Appellant.

Robert Harrison, for C. S. Tilton, Intervenor, Appellant.

J. P. Langhorne, and L. J. Welch, for Respondent.

McFARLAND, J.—This is an appeal by the defendant Ashworth and the intervenor Tilton, from a judgment of the superior court in *mandamus*, whereby it was decreed that the defendant Ashworth, as superintendent of streets, etc., of the city and county of San Francisco, do pay to the plaintiff the sum of $5,713, with interest. Appellants also appeal from an order denying a new trial.

The real contest is between the intervenor, Tilton, who was city and county surveyor and engineer from the first Monday in January, 1891, to the first Monday in January, 1893, and the respondent, who was such surveyor and engineer from the first Monday in January, 1893, to the first Monday in January, 1895. The law which provides for work upon streets, lanes, etc., and for the construction of sewers within municipalities, requires that a contractor for such work "must advance to the superintendent of streets, for payment by him," certain enumerated costs, and "other incidental expenses" (Stats. 1889, p. 162); and it is further provided that "the term 'incidental expenses,' as used in the act, shall include the compensation of the city engineer for work done by him." On December 13, 1893, while respondent was city surveyor and engineer, the superintendent of streets, who was then W. W. Ackerman, in pursuance of preliminary steps and orders regularly taken and made, en-

tered into a written contract in due form with one W. L. Prather,
Jr., for the construction by the latter of what is called the "Rich-
mond outlet sewer." Ackerman was superintendent until the
first Monday of January, 1895, when the present appellant be-
came superintendent. This contract was subsequently assigned
by Prather to Henry Matthews, who duly performed the work
provided for in the contract, and completed the sewer prior to
January 5, 1895.

The resolution of intention, No. 8629, under which the work
above mentioned was done, was passed May 1, 1893, and approv-
ed by the mayor May 4, 1893. By resolutions No. 8550, passed
April 10th, No. 8718, passed May 22d, and No. 8882, passed
June 19th—all in 1893, while respondent was city engineer—
the board of supervisors directed the respondent to examine
certain plans, etc., which had formerly been prepared, and re-
port concerning the same; to "make a diagram of the property
affected or benefited by the proposed work of constructing" said
outlet sewer, "as expressed in resolution of intention No. 8629";
and to "prepare plans and specifications for the sewer and work
provided for in said resolution of intention No. 8629." The
court below found that the respondent complied with these sev-
eral requirements, and there is sufficient evidence to support the
finding. On June 19, 1893, the board passed resolution No.
8868, by which said work was ordered to be done. On Novem-
ber 6, 1893, the board passed resolution No. 9489, by which it
fixed the compensation of respondent for his services as surveyor
and engineer for surveying, making plans and specifications and
diagrams in relation to said work, at the sum of $7,515; and the
court found, upon sufficient evidence to uphold the finding, that
said resolution was not passed under misapprehension or mis-
take, or through any false representations made to the board by
or on behalf of respondent, as charged by appellants. The court
also found that afterward, during the progress of the work, re-
spondent did other engineering work in connection with said
sewer of the reasonable value of $1,008, and that his compensa-
tion therefor, under fees theretofore fixed by the board, was the
said sum of $1,008—making his whole demand $8,523. For
this latter sum he presented to the superintendent of streets a
demand itemized and verified, with a credit thereon of $2,810,

which had been paid him by the assignee of said contract, leaving a balance unpaid of $5,713—which is the money involved in this action. The superintendent made an assessment to cover the expenses of said work, and included therein the sum of $8,523, the amount of respondent's demand as compensation for engineering services, and no other sum of money was included in the assessment for any engineering services. Upon the delivery of the assessment, on June 20, 1895, by the superintendent to the assignee of the contractor, the latter paid to the former, defendant and appellant, the said sum of $5,713. The assessment was made upon a certificate of the respondent that the work had been completed.

Upon the foregoing facts—if there were none other to be considered—it is clear that the judgment of the court below was right. The resolution of intention (No. 8629) to have the work done was passed while respondent was surveyor and engineer; subsequent steps were taken which led to the making of the contract and the completion of the work, all during his term of office; he was required by the board of supervisors to render certain engineering services, and compensation therefor was fixed by the board under authority expressly given that body by the street law (Stats. 1889, sec. 34, subd. 1, p. 171); the assessment was made upon the certificate of the respondent that the work had been completed; the exact amount of his demand, $8,523, was included by the superintendent in the assessment as incidental expenses for engineering services, and the balance paid by the contractor for such expenses, $5,713, is in the hands of the superintendent, the defendant and appellant herein. Under these circumstances, it was the clear duty of the appellant, Ashworth, to pay the said balance to respondent, unless there are other facts which change the legal aspect of the case.

But appellants contend that there are other facts in the case which show the conclusion above indicated to be incorrect. Those facts are briefly as follows: About two years before respondent became surveyor and engineer, on February 2, 1881, the board of supervisors passed a resolution, No. 4668, by which the intervenor, Tilton, who was then surveyor and engineer, was ordered to make an examination of the sewerage system of the Richmond district in anticipation of the construction of the

"Richmond outlet sewer," hereinbefore referred to. Tilton made such examination and reported to the board upon the subject. On November 9, 1891, the board passed resolution No. 5979, by which it directed Tilton, as city engineer, to prepare plans and specifications for a sewer to serve as an outlet for said Richmond district; and Tilton did prepare plans and specifications and filed the same with the clerk of the board, but the board never expressly approved the same. Afterward, on February 8, 1892, the board passed a resolution of intention, No. 6441, for the construction of said sewer, the plans, specifications, and boundaries of the said district mentioned in said resolution being those prepared by Tilton. On May 23, 1892, the board passed resolution No. 7037, by which it ordered Tilton to make a diagram of the property to be affected or benefited by the construction of said sewer and to be assessed to pay the expenses thereof; and in pursuance of the resolution Tilton did make a diagram and file the same with the clerk of the board; but the board never approved said diagram. The plans, specifications, and diagram prepared by Tilton were filed with the clerk of the board and were marked and called "sewer outlet" of said district. But there never was any construction of said sewer under said resolution of intention No. 6441, for the reason that under the plans the sewer was to be constructed in part through private lands, the right of way over which had been given by the owners of said lands; and the persons to whom the contract had been awarded refused to carry it out on the ground that the resolution of intention and all proceedings thereunder were void because the street law did not provide for the performance of any street improvement or the construction of a sewer in or through private property. All the proceedings under said resolution of intention No. 6441 were abandoned. In November, 1892, Tilton presented to the board his verified demand against the city and county of San Francisco, and the treasury thereof, for the sum of $8,500, as compensation to him as surveyor and engineer for the performance by him of the work above stated; and on December 9, 1892, a few days before he went out of office, the board by resolution No. 8160 approved and passed to print his said demand for $8,500 against the city and county. Tilton, also, after he had ceased to be city engineer and surveyor, filed in the office

of the then superintendent of streets his verified and itemized bill in the sum of $8,500 for said services. Afterward, on March 11, 1893, the street law was amended by the legislature so as to give the board of supervisors power to cause the construction of sewers or sewers with outlets "in, over, or through any right of way granted or obtained for such purpose." Thereafter the board commenced new proceedings for the construction of said outlet sewer, and adopted the resolution of intention No. 8629, hereinabove referred to, and conducted the proceedings to the completion of the work during the incumbency of the office of surveyor and engineer by the respondent, Fitzhugh, as hereinabove set forth. In said resolution of intention No. 8629 it was resolved "that it is the intention of the board to order the following street work in the city and county of San Francisco, according to the plans and specifications prepared by C. S. Tilton, city engineer"; and reference was made to said documents on file in the clerk's office, called "sewer outlets," prepared by Tilton as aforesaid.

It is contended by appellants that under all the facts hereinabove stated, and in accordance with their views of certain other questions of fact which are found adversely to them by the court, it was the duty of the appellant, Ashworth, to pay to appellant Tilton the said $5,713 as part of Tilton's said claim of $8,500 for engineering services rendered in 1891 and 1892 under the abandoned resolution of intention No. 6441.

Appellants contend that Fitzhugh did not do any real engineering work in connection with said outlet sewer, but that he merely traced and copied the plans, specifications, diagram, etc., which Tilton had prepared under the former resolution of intention No. 6441. The court found, however, that the district affected and benefited by the work done under the resolution of intention No. 8629, and to be assessed for the expenses of the work, was "of greater extent and area than the district described in said resolution of intention No. 6441." The court further found that Fitzhugh made the diagram in question, which included the space of land fifty feet next to and on each side of the right of way of said sewer, as directed in resolution No. 8629; that said diagram was approved by the board, and that it was "the diagram made by plaintiff, and not the diagram made by C...

S. Tilton"; and that "in making said diagram plaintiff did not take tracing copies of the diagram prepared by C. S. Tilton." The court further finds: "That the drawings, plans, specifications, maps, and diagrams referred to in said resolution No. 8868 were those prepared as aforesaid by plaintiff, and were not any of those prepared by C. S. Tilton." There was evidence sufficient to support these findings of the court; although Fitzhugh was no doubt benefited in rendering his engineering services by the work formerly done by Tilton, the evidences of which were on file as public documents in the office of the clerk of the board of supervisors.

Tilton may be justly entitled to compensation by the city and county for the work he did in 1891 and 1892, under the abandoned resolution No. 6441, whether or not he has any legal remedy therefor; but the court correctly held that such compensation could not be legally included as "incidental expenses" of the work done under the subsequent and entirely new resolution of intention, No. 8629, to be paid by the contractor to the superintendent of streets. It is quite evident that the board never allowed Tilton's bill of $8,500 for the purpose of being included in any assessment to be made under the resolution of intention No. 6441; for at the time of the passing to print of the resolution approving Tilton's bill the said resolution No. 6441 and all proceedings for the construction of the sewer under it had been abandoned. After the amendment of the street law, other and new proceedings were instituted for the construction of the sewer under resolution of intention No. 8629, and work done under that resolution could alone be included as "incidental expenses," within the meaning of the statute; and it is to be noticed that the exact amount of Fitzhugh's bill was included by the superintendent in the assessment, although in his answer to the intervention the superintendent for the first time claims that he intended the assessment to include Tilton's demand. If the demand of Tilton, as well as that of Fitzhugh, had been put in the assessment, the amount thereof would have been over $17,000; and certainly the demand of Fitzhugh for work done under the resolution and proceedings in accordance with which the sewer was actually constructed, which demand was for services ordered by the board during said proceedings, and the compensation for which was

approved by the board, constituted, under any view, part of the incidental expenses which the contractor was required to pay to the superintendent before any assessment could be made, and which the superintendent was required to put into the assessment. The work was certainly not done under two resolutions of intention; it was done under the latter resolution, No. 8629, which alone was the foundation of the jurisdiction of the board to proceed with the work, and all "incidental expenses" were necessarily thus connected with the work done in the proceedings had under and in connection with said latter resolution. Property holders could not be burdened with expenses incurred under one or half a dozen former abandoned proceedings. This conclusion is not affected by the fact that in resolution of intention No. 8629 there was a statement referring to the former plans and specifications prepared by Tilton. Plans and specifications do not constitute a necessary part of a resolution of intention (*Harney v. Heller*, 47 Cal. 15); they are superfluous, and need not be followed. Immediately afterward the board ordered Fitzhugh to make plans, specifications, diagram, etc., under which the work was carried on and completed.

Under the foregoing views, our conclusion is, that the judgment of the court below was right and should be affirmed. It is not necessary to notice other points which merely present in different forms the main questions above discussed, which are determinative of the merits of the case.

The appellant, Ashworth, makes the point here, substantially for the first time, that *mandamus* is not the respondent's proper remedy. It is true that in his lengthy answer, covering about eighteen pages of the printed transcript, he does say in one place. that he "denies that plaintiff has not a plain, speedy, and adequate remedy in the ordinary course of law for the cause of action or proceeding set forth in his said petition and complaint herein," but the prayer of his complaint is "that the court order the said C. S. Tilton to be brought in and made a party to this action or proceeding," and "that thereupon the court determine to whom the said sum of money be paid," and during the trial no question was raised as to the form of the remedy. Tilton, in his intervention, makes no objection to the form of proceeding, and prays that the said sum of $5,713 be ordered paid to him

as part of his claim of $8,500. Under these circumstances, we are not called upon to look very closely into the question whether or not the respondent had any other "speedy and adequate remedy." However, as the appellant Ashworth collected the money involved here as superintendent of streets, and now holds it in his official capacity, it is his duty, enjoined upon him by law, to pay the sum to the party entitled thereto; and under these circumstances we think that *mandamus* was a proper proceeding to enforce the respondent's rights in the premises.

Judgment and order appealed from are affirmed.

Temple, J., and Henshaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.